UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

HALEY FIFE                                          CIVIL ACTION NO. 07-2021

VS.                                                 SECTION P

LINDA LAING, ET AL.                                 JUDGE JAMES

                                                    MAGISTRATE JUDGE HAYES

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on November 21, 2007, by *pro se* plaintiff Haley Fife.  Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC).  She is incarcerated at the Franklin Parish Detention Center (FPDC), Winnsboro, Louisiana; however she complains about conditions and circumstances which arose while she participated in a work-release program associated with her confinement at the Richland Parish Detention Center (RPDC), Rayville, Louisiana.  Plaintiff has not specified the relief sought in this complaint, but has named two defendants, RPDC Warden Linda Laing and an individual named Fred Eubanks, identified only as an employee of "Tifton," plaintiff's work-release employer.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous.

### Statement of the Case

In December 2006, plaintiff was incarcerated at the RPDC, Rayville.  She was allowed to

1

participate in a work-release program and was employed in the fabrication department of a company she identified only as "Tifton." On December 7, 2006, she was operating a mill saw cutting 17' beams which weighed 200 lbs. As she and her co-worker were lifting these beams from a buggy, plaintiff injured her knee.  Plaintiff notified her supervisor and fellow workers and was sent to the security department at Tifton.  An individual there checked her leg and knee and applied an ice pack and Ace Bandage.  Plaintiff telephoned RPDC and requested transportation back to the prison.

On her return to RPDC, she was examined by a physician.  By that time her leg and knee were swollen and she experienced some difficulty walking.  The physician ordered her to keep her leg elevated, to ice it twice daily, and to take Ibus.[1]  He also advised her that if her condition improved, she could return to work.

Plaintiff treated her injury as directed; however, her condition did not improve.  The lower part of her leg remained swollen and plaintiff continued to experience difficulty when attempting to walk.  When she complained to the nursing staff, she was treated with ice packs and Ibus.

On Monday December 11, 2006, plaintiff was examined by Head Nurse Grant.  She advised Grant that her condition had not improved and requested an x-ray examination.  Nurse Grant arranged for her to be taken to the E.A. Conway Hospital where she was examined by a

---

[1] "Ibus" are nonsteroidal anti-inflammatory drugs (also called NSAIDs) and are used to relieve some symptoms caused by arthritis (rheumatism), such as inflammation, swelling, stiffness, and joint pain. Some of these medicines are also used to relieve other kinds of pain or to treat other painful conditions, such as gout attacks; bursitis; tendinitis; sprains, strains, or other injuries; or menstrual cramps. Ibuprofen and naproxen are also used to reduce fever. Non-steroidal anti-inflammatory drugs may also be used to treat other conditions as determined by a physician. See Medline Plus, a service of the Untied States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/uspdi/202743.html

physician. The physician put her in a mobile cast and provided her with crutches.

Plaintiff was transferred to medical lock-down to accommodate her need for crutches and prescribed pain medication.

Tifton, the work-release employer, discharged her and accused her of violating RPDC work-release  policy by having visitors on the job site and unauthorized family visitation. (Plaintiff admits that a friend of hers asked to see her on the job site on a day when plaintiff was not at work; she also admits that she spoke from time to time with a relative who was also employed at Tifton.  Finally, she also admits that she used the telephone, an action which she knew was against RPDC rules.) Nevertheless, plaintiff implies that her discharge was unrelated to the reasons supplied by her employers.

Plaintiff contends that she was discharged because she had previously accused her supervisor of using profane language.  However, the RPDC Warden maintained that plaintiff was medically discharged.

Plaintiff remained in confinement in a cell until December 27, 2006, when she was transferred to a dormitory.  A couple of days after her transfer to the dormitory, plaintiff discovered that she had six bite marks on her body.  Plaintiff was examined by Ms. Atkins who provided her with salve and benedryl.[2]  Her condition continued to deteriorate.  Plaintiff requested numerous sick calls and was threatened with lock-down if she continued to make such requests.  Nevertheless, she was again examined by a nurse who diagnosed her as having boils;

---

[2] Benedryl, or Diphenhydramine, is an antihistamine used to relieve, among other things, the itching of insect bites, sunburns, bee stings, poison ivy, poison oak, and other minor skin irritations. See Medline Plus, a service of the Untied States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682539.html

the nurse again provided salve and benedryl.  However, by this time, plaintiff claims that her arm

and side were so swollen that she could not sleep.  She remained in this condition for a period of

two weeks.

Plaintiff received a Sunday afternoon visit from Sheriff Charles McDonald.  The Sheriff

attempted unsuccessfully to contact plaintiff's parents.  He then asked plaintiff to choose another

facility for incarceration and promised to have her transferred.  That night, he sent plaintiff to the

E.A. Conway Hospital.  She was seen by a physician who cut, drained, and packed the injury on

her arm; a nurse did the same thing to the four injuries on her side.

According to plaintiff, Sheriff McDonald became upset when plaintiff's family got the

LDOC involved.  Plaintiff was then transferred to the LDOC facility for women in St. Gabriel.

During her stay in that institution, her arm was packed every day for a period of two weeks.

She was attended to by Dr. Ross at St. Gabriel who advised her to postpone knee surgery

until she was released from custody since it would take about one-year for the LDOC system to

attend to her problem.  He also advised her that LDOC did not offer physical therapy and she

would need that.  Plaintiff claims that she continues to have problems with her knee; she walks

with a slight limp and is unable to bend her knee.  She claims that she needs surgery but cannot

afford it.

***Law and Analysis***

***1. Initial Review***

When a prisoner sues an officer or employee of a governmental entity pursuant to

42 U.S.C. §1983,  the court is obliged to evaluate the complaint and dismiss it without service of

process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits  alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).  District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous.  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

As noted above, plaintiff does not specify the relief she seeks; nor does she provide a

detailed statement with regard to her theories of liability. Nevertheless, the detailed recitation of facts provided with her original complaint can be read to support several possible theories of liability with respect to each of the named defendants.  Therefore, further amendment of these pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, the undersigned concludes, for the reasons stated hereinafter, that  plaintiff's claims are frivolous.

## 2. Work-Release

In order to hold any of the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. See *Hessbrook v. Lennon*, 777 F.2d 999, 1005 (5th Cir. 1985). Plaintiff's detailed description of the events which transpired in December, 2006 could be interpreted to imply that she was deprived of either liberty or property without due process when she was discharged from her work-release job at RPDC and Tifton.

Plaintiff has neither a liberty nor property interest in the work release program and therefore any such due process claims are frivolous.  La. R.S.15:1111, the statute establishing Louisiana's work release program,  provides in part, "The Department [of Corrections] shall establish rules for the administration of the work release program and shall determine those inmates who may participate in the release program.  Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program..."

In *Welch v. Thompson*, 20 F.3d  636 (5th Cir. 1994),  the Fifth Circuit determined that La. R.S.15:1111 entrusts  the actual operation of the work release program to the LDOC.  The court

further determined that the statute does not dictate to the LDOC whom it must put on work release.  In short, the Fifth Circuit held that "...La. R.S.15:1111 does not create a liberty interest subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d  636, 644 (5th Cir. 1994) (emphasis supplied). Since the statute does not create a protected liberty interest for eligible prisoners,  there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

To the extent that plaintiff also implies that she was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such claim also lacks an arguable basis in law and fact.  In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit,  a person must have more than a "unilateral expectation" of it.  Rather, she must "have a legitimate claim of entitlement to it." *Id.* (emphasis supplied).    Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708.   In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988).   Plaintiff can identify no such rules with respect to the administration of Louisiana's prison work-release program.

In any event, there were apparently valid considerations for her discharge which were taken into account by the defendants.  Plaintiff has provided only conclusory allegations in support of her implied claim to the contrary.

Further, plaintiff's incarceration is lawful. Lawfully incarcerated persons retain only a narrow range of protected liberty interests.  Broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking."  *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974)  To hold  that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners do not have a constitutionally derived liberty interest in being held in any particular institution. See *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984);  *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000). Plaintiff had neither a liberty nor property interest in her continued eligibility to participate in the work release program; she clearly had no entitlement to participate in the program at the site of her choice; nor did she have any right to assert entitlement to be incarcerated at one prison or detention center over another.

In short, to the extent that she implies contrary claims, her complaint is frivolous.

*3. Medical Care*

Plaintiff may also imply by her pleadings that she was denied prompt and adequate medical care.  Plaintiff's medical care claim arises under the Eighth Amendment's prohibition against cruel and unusual punishment.  In order to show an Eighth Amendment violation in this context, plaintiff must show that the defendants were deliberately indifferent to her serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001).  Plaintiff has not made such a  showing.

Deliberate indifference in the context of the failure to provide reasonable medical care to a prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Id.* at 458-59.

"[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001).  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff's detailed recitation of the facts is insufficient to establish deliberate

indifference. Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; nor has she shown that they actually drew such an inference; nor that their response to plaintiff's complaints indicated that they subjectively intended that any harm occur to the plaintiff. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

To the contrary, plaintiff's statement of the case reveals that her medical complaints were addressed on each occasion that the claims were brought to the attention of prison authorities.[3] In short, to the extent that  plaintiff claims that she was adequate medical care her claims are frivolous and dismissal on that basis is recommended.

### 4. Supervisory Liability

Plaintiff has sued only two individuals, Warden Laing and Fred Eubanks;[4]  however,  she has not specifically alleged that either of these defendants did anything to cause her harm. Plaintiff implies that these individual are liable because of their positions of authority.  It is well

---

[3] By her own admission, plaintiff received immediate first aid for her injury at her work place on December 7, 2006. Upon her return to RPDC she was examined and treated by a physician. Four days later she was examined by the RPDC's Head Nurse who arranged for plaintiff to be examined at E.A.Conway Hospital. She was again examined and treated by a physician who put her leg in a cast. Upon the discovery of the unexplained "bites" she experienced in the RPDC dormitory, she was examined by nurses who provided salves, ointments, and medication. Notwithstanding threats to place her in lock-down, plaintiff's continued complaints resulted in further examination by the nursing staff and a personal visit by the parish sheriff who sent her again to E.A. Conway for treatment. While plaintiff might disagree with diagnosis and the efficacy of treatment, such disagreement does not establish deliberate indifference.

[4] Plaintiff's theory of liability with respect to Mr. Eubanks is unclear. She has not alleged any specific act or failure to act regarding this defendant. Of course, the law is clear:  "[Section] 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 n. 3 (5th Cir.1999). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)(emphasis supplied).  Plaintiff has not alleged facts sufficient to establish that Mr. Eubanks was a "state actor" and thus, it appears that he may not be an appropriate defendant in this action.

10

settled that supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*. *Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); *Jennings v. Joshua Indep. Sch. Dist.*, 877 F.2d 313 (5th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

To be liable under § 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir.1998).

Plaintiff fails to make sustainable allegations which would establish supervisory liability on the part of these supervisory officials.  To establish the personal liability of these defendants, plaintiff  must show that their personal action or inaction violated her civil rights. *Reimer v. Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir.1981).  Plaintiff has alleged no facts to establish that these defendants were personally involved in the events that form the basis of her claims.

Further,  plaintiff failed to allege that any of these defendants implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights.  Accordingly, plaintiff has failed to state a claim pursuant to § 1983 against the defendants.

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may

respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See, Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir.  1996).

**THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 6th day of December, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE